**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 17-cv-00279-PAB-MJW**

JOHN A. OLAGUES,

      Plaintiff,

v.

JEFFREY TARR, *Pres and CEO,*
STEPHANIE COMFORT,
SCOTT WALTER,
TIMOTHY HASCALL, and
DIGITALGLOBE, INC.,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Jeffrey Tarr, Stephanie Georges (f/k/a Stephanie Comfort), Dr. Walter Scott (referred to as Scott Walter in Complaint), and Timothy Hascall (the "Officers") and DigitalGlobe, Inc. ("DigitalGlobe" or the "Company"), move to dismiss this action for failure to state a claim upon which relief can be granted, because Plaintiff (i) cannot adequately represent the Company's interests under Section 16(b) of the Securities Exchange Act and (ii) has not alleged a non-exempt disposition of shares subject to that statute.

### INTRODUCTION

Plaintiff John A. Olagues brings this action as a shareholder of DigitalGlobe, under Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b), which concerns short-swing insider trading. His claim pertains to various equity compensation awards issued to the Officers by the Company, with approval of the board of directors or compensation committee, granting

the Officers various shares in the Company. When those awards vested, the Company withheld a portion of the shares to meet anticipated tax liability. There is no dispute that SEC Rule 16b-3 exempts such equity awards from Section 16(b). Plaintiff contends, however, that the shares withheld for tax purposes are *not* exempt under Rule 16b-3. He has matched up withheld shares with any open-market purchases of shares by the Officers at a lower price within six months, and argues that the Officers must repay to the Company these differences, totaling some $123,000.

The Court should dismiss the Complaint for two independent reasons. First, even if his theory had any legal basis, Plaintiff cannot bring this claim. Mr. Olagues purports to bring his claim to advance the interests of the Company. In general, however, a *pro se* litigant may not represent a corporation's interests. It would be particularly inappropriate to permit Mr. Olagues to do so here. Under Section 16(b), he cannot obtain any monetary recovery; rather, his only interest here is the hope of a separate pay-off for the nuisance value of his suit, an objective that does nothing to further the interests of the Company. Second, Plaintiff's theory is untenable as a matter of law. Both the Securities and Exchange Commission ("SEC") and the Southern District of New York have rejected the notion that withholding shares for tax purposes from previously approved equity compensation awards requires separate approval under Rule 16b-3.

## FACTUAL BACKGROUND

For purposes of this motion only, Defendants assume the factual allegations of the Complaint (ECF No. 1) —to the extent they are coherent enough to follow—to be true.

1. DigitalGlobe is a publicly traded corporation registered with the SEC. Complaint, ¶ 5.
2. The other defendants are all officers or directors of DigitalGlobe. *Id.*, ¶ 1.
3. Defendant Tarr purchased 9,000 shares of DigitalGlobe on the open market between

November 19, 2014 and March 1, 2016. *Id.*, ¶¶ 9-10. Defendant Hascall purchased 2,043 shares on the open market on December 11, 2014. *Id.* Defendants Georges and Walter purchased 1,896 shares and 627 shares, respectively, on the open market on November 3, 2015. *Id.*

4. Plaintiff has matched all of these open-market purchases with "dispositions" of the same number of shares by the same Officers within six months of the purchases. *Id.*, ¶ 9.

5. In each case, the "disposition" of shares in question consisted not of any purchase or sale of shares, but rather shares withheld by the Company to meet anticipated tax liability, upon release of a larger number of shares awarded to the Officers as equity compensation. *Id.*, ¶ 10.[1]

6. Plaintiff has matched the withheld shares with open-market purchases of shares by the same Officers, where the purchases were at a lower price and occurred within six months of the release of the equity compensation shares. *Id.*, ¶¶ 9-10.

7. He calculates that Defendant Tarr purchased 9,000 shares that could be matched with prior or subsequent withholdings, at a price differential totaling $88,768. The price differentials of the other three Officer Defendants range between $9,574 and $13,623. The total alleged "profits" at issue are $122,961. *Id.*, ¶ 9.

8. The Complaint does not contest that the equity compensation awards to the Officers were approved by the Company's directors or compensation committee. Rather, the Complaint alleges that the withholding of shares for tax purposes was not specifically approved so as to exempt the withheld shares from the scope of Section 16(b). Complaint, ¶¶ 10, 12, 15.

---

[1] The language of the Complaint is regrettably unclear on this point, stating only "the Share Dispositions were to DigitalGlobe Inc. for tax payments." *Id.* However, Defendants believe there is no dispute this language is meant to describe shares withheld from compensation awards for tax purposes. See Proposed Scheduling Order (ECF No. 13), at 5 (Undisputed Fact: "DigitalGlobe released DigitalGlobe shares from equity compensation awards to the Officers, withholding some shares for tax purposes."). Defendants can think of no other shares that might be described as "disposed to DigitalGlobe Inc. for tax payments."

9. The Employee Stock Option Plan governing the equity compensation awards at issue, attached as Exhibit 1,[2] states a "default rule" that shares will be withheld to cover tax obligations unless some other arrangement has been made:

> In the absence of any other arrangement authorized by the [Compensation] Committee or set forth in the Award Agreement, and to the extent permitted under Applicable Law, *each Participant shall be deemed to have elected to have the Company withhold* from the Shares or cash to be issued pursuant to an Award that number of Shares having a Fair Value determined as of the applicable Tax Date (as defined below) or cash equal to the minimum applicable tax withholding and employment tax obligations associated with an Award.…

Exhibit 1 hereto, at p. 8, § 9(b) (emphasis added).

## LEGAL BACKGROUND

To survive a motion to dismiss, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 677-78.

Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b), permits a shareholder of a corporation to sue to recover the gains enjoyed by an insider who realizes profits on purchases and sales of the corporation's stock within a six-month time period. While this is a strict liability provision, with no *scienter* requirement, the purpose of the provision is to "curb the evils of insider trading" by creating "a flat rule taking the profits out of a class of transactions

---

[2] In a securities action, the court may consider the key documents underlying a plaintiff's claim. *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013). Here, the Complaint questions the Plan terms, alleging the withholding of shares was "not prior approved with sufficient specificity." Complaint, ¶¶ 10, 12. In light of these implicit references to the governing Plan, the Court is entitled to consider the Plan language on a motion to dismiss. *See Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (analyzing terms of Plan on motion to dismiss ERISA claim).

in which the possibility of abuse was believed to be intolerably great." *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422 (1972).

The Securities and Exchange Commission has ruled that an insider's receipt of an equity compensation award constitutes a purchase of the company's securities for purposes of Section 16(b); however, it has also enacted Rule 16b-3, 17 C.F.R. § 240.16b-3, which creates an exemption covering most such awards. In particular, as discussed in greater detail below, Rules 16b-3(d) and 16b-3(e) exempt acquisitions of securities from the issuer and dispositions to the issuer, respectively, if approved by the issuer's board of directors or compensation committee.[3]

Plaintiff does not contest that DigitalGlobe's directors or compensation committee approved the equity awards at issue. Instead, he insists that this approval does not extend to the withholding of shares from the award to cover tax liability, which he regards as a sale of some of the shares back to the Company. The question here is thus whether the exemption of Rule 16b-3(d) or 16b-3(e) applies to shares withheld from an equity compensation award for tax purposes.

## ARGUMENT

Plaintiff has not stated a claim upon which relief can be granted for two independent reasons. First, he cannot adequately represent the Company's interests in this litigation. Second, his theory of liability under Section 16(b) is wrong under the law.

### I. PLAINTIFF CANNOT PURSUE HIS THEORY UNDER SECTION 16(b) AS A *PRO SE* LITIGANT.

Even if there were any merit to his theory of liability under Section 16(b), Plaintiff cannot pursue that theory here. Mr. Olagues, a serial section 16(b) plaintiff, attempts to bring this action

---

[3] Rules 16b-3(d) and 16b-3(e) do not apply to "Discretionary Transactions," but that is a defined term with a narrow meaning, limited to certain intra-plan transfers. *See* 17 C.F.R. § 240.16b-3(f).

*pro se*. But it is well settled in general that a *pro se* litigant cannot represent a corporation's interests in a lawsuit. It would be particularly inappropriate to allow Mr. Olagues to do so here, in the context of Section 16(b), because he cannot adequately represent the Company's interests.

### A. An Individual May Not Represent a Corporation's Interests Pro Se.

Plaintiff brings his action to recover amounts allegedly due to the Company. As a matter of law, that is not a claim he may pursue as an individual *pro se*. A corporation's interests must be represented through counsel in this Court.

While Mr. Olagues is the named Plaintiff, his only claim is for a recovery on behalf of Defendant DigitalGlobe. Complaint, ¶ 6 ("this action is brought by Plaintiff in order to obtain a recovery for the firm DigitalGlobe Inc."). If there were any legitimate claim here under Section 16(b), the issuer DigitalGlobe, and not Mr. Olagues, would be the real party in interest. *See Burks v. Lasker*, 441 U.S. 471, 484 n.13 (1979) (Section 16(b) "authorizes shareholder suits to recover insider 'short swing' profits on behalf of the company").

It is a longstanding rule of law in this circuit, however, that corporations must appear in court through attorneys, not through individuals representing the corporations. *See Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney …") (citation omitted).

Crucially, while there are circumstances where an individual is assigned or authorized to pursue a corporation's interests, such circumstances do *not* create an end-run around the rule that corporations must be represented by attorneys in litigation. To the contrary, "courts will look past the legal title to determine whether a *pro se* purported assignee is circumventing rules and statutes requiring that corporations be represented by counsel in legal proceedings." *In re*

6

*Thomas*, 387 B.R. 808, 815-16 (D. Colo. 2008) (extensive citations omitted). In *Tal v. Hogan*, 453 F.3d 1244, 1254-55 (10th Cir. 2006), the Tenth Circuit held that even where a statute authorized a director to sue on behalf of the corporation, he could not do so *pro se*. By the same reasoning, Mr. Olagues is not entitled to pursue his claim on behalf of DigitalGlobe.

### B. Mr. Olagues Is Not An Adequate Representative of the Company's Interests in a Section 16(b) Action.

Moreover, Mr. Olagues cannot adequately represent the Company's interests in Section 16(b) litigation, because his interests are not at all aligned with the Company's, because he has an appalling history of vexatious litigation under that statute, and because he has already demonstrated his inability to prosecute his action effectively in this case.

While there is a split among the federal courts on the issue, the Tenth Circuit is among the courts that treat Section 16(b) actions as analogous to derivative lawsuits. This question has arisen in the context of whether a 16(b) settlement requires judicial approval, as a settlement of a derivative claim would under Fed. R. Civ. P. 23.1. The Tenth Circuit explicitly applied Rule 23.1 to a 16(b) settlement in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir. 1984). The case at bar illustrates how that rule serves to prevent settlements that would do nothing to benefit the company. *Compare Levy v. General Electric Capital Corp.*, 2001 WL 987873, *7 (Aug. 30, 2001) (rejecting 16(b) settlement of $350,000 to Plaintiff's attorneys on $2.7M claim, when the settlement had "not been shown to create one dollar of real value" to the company).

By that reasoning, the requirement in a derivative suit that a plaintiff can adequately represent the corporation's interests should apply in the Section 16(b) context. A 16(b) action, like a derivative suit, is meant to further the interests of all shareholders, not just the plaintiff. Here, Mr. Olagues is in no position to advance the interests of the Company and its shareholders.

The great majority of Section 16(b) cases are brought by a shareholder in the issuer, represented by one of the law firms that specializes in 16(b) litigation. In those cases, it has long been understood that the plaintiff acts as a courtesy for the lawyers, whose incentive is recovery of their fees. *See Smolowe v. Delendo Corp.*, 136 F.2d 231, 241 (2d Cir. 1943) ("in many cases . . . the possibility of recovering attorney's fees will provide the sole stimulus for the enforcement of Section 16(b)") Here, there are no attorneys' fees to recover, so the Plaintiff's interests and incentives do not in any way align with the Company.

Under Section 16(b), Plaintiff will not share in any portion of any recovery on behalf of the Company. Thus, there are only two possibilities. One is that he brings this case out of sheer altruism. The other is that he seeks some outcome that would be of no benefit to the Company and its other shareholders. The first possibility is easily disposed of—as demonstrated in the margin, Mr. Olagues is a serial Section 16(b) litigant, filing cases around the country against corporations and their officers wherever he spots a potential loophole in the effect of the statute.[4]

Mr. Olagues' pattern of filing serial Section 16(b) lawsuits confirms the second possibility: he is seeking some advantage for himself, of no benefit to DigitalGlobe. In particular, he seeks recovery through settlement—a settlement that would provide him some compensation, but may not result in any recovery to the corporation on whose behalf he supposedly brought suit. Indeed, Mr. Olagues has in this very case informed defense counsel that he would withdraw his Complaint in exchange for a "consulting fee," *i.e.*, a payment to Mr.

---

[4] A *partial* list includes *Olagues v. Semel*, 235 Fed. Appx. 499 (9th Cir. 2007) (affirming dismissal of 16(b) action: "the questions raised in [Mr. Olagues'] appeal are so insubstantial as not to require further argument"); *Olagues v. Icahn*, 2016 WL 1178777 (S.D.N.Y. Mar. 23, 2016) (dismissing 16(b) claim that was "maybe five or six bridges too far" to support liability); *Olagues v. Dimon*, No. 14-cv-4872-GHW (S.D.N.Y. June 2, 2014) (16(b) suit voluntarily dismissed after defendants filed motion to dismiss); and *Olagues v. Steinour*, No. 2:17-cv-0049-EAS (March 29, 2017 motion to dismiss 16(b) claim pending).

Olagues for "consulting services" no one wanted, of no benefit to the Company.[5] As a matter of law, a plaintiff cannot adequately represent a corporation's interests where his action is brought merely to serve his own interests. *E.g.*, *Epstein v. MCA, Inc.*, 179 F.3d 641, 650 (9th Cir. 1999) (no adequate representation where case only "served the interests of counsel in getting a fee").

To make matters worse, in this very case, Mr. Olagues has already demonstrated his inability to represent the interests of the Company or its shareholders on a *pro se* basis, by his failure to comply with the most basic rules and procedures of the court. The Court has already, at this early stage of litigation, issued an order to show cause why the case should not be dismissed for failure to prosecute. *See* ECF No. 16. As reflected in that order, Mr. Olagues has failed to appear for a scheduling conference set by the Court in this matter, has failed to make his required Rule 26(a)(1) disclosures, and has shown no capacity to treat a federal lawsuit against a major corporation and several of its leading officers with the seriousness such a case requires.

This Court should not tolerate Mr. Olagues' misuse of the litigation process for his own personal gain. It should dismiss his action under Section 16(b) in its entirety, with prejudice.

## II. PLAINTIFF HAS FAILED TO STATE A VIABLE CLAIM UNDER SECTION 16(b).

The theory underlying the Complaint is that the exemption of Rule 16b-3 does not extend to shares withheld from the Officers' equity compensation awards for tax purposes. This is wrong as a matter of law. Rule 16b-3 exempts equity compensation awards approved by a corporation's directors or compensation committee. There is no basis in the law for Plaintiff's suggestion that to withhold some shares for tax purposes requires separate, specific approval; to

---

[5] *See* Declaration of Van Aaron Hughes, attached hereto as Exhibit 2. Even if this statement was intended as an offer of compromise, Defendants do not use it to prove or disprove the validity or amounts of any disputed claims or to impeach any testimony. *See* Fed. R. Evid. 408(a). In any event, the Court could consider such an offer in order to evaluate the Plaintiff's bias or prejudice under Fed. R. Evid. 408(b).

the contrary, both the SEC and the Southern District of New York have rejected this view. The circumstances here—approval of the equity compensation awards subject to a default rule that some shares will be withheld to cover tax liability—thus fall within the exemption of Rule 16b-3.

### A. Rule 16b-3 Exempts Equity Compensation Awards Approved in Advance.

Section 16(b) expressly grants the SEC power to exempt transactions it finds to be outside the purposes of the statute. 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover any … transaction or transactions which the [SEC] by rules and regulations may exempt as not comprehended within the purpose of this subsection.") Consistent with *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts have routinely deferred to the SEC's expertise in enacting Rule 16b-3, exempting certain transactions between issuers and its insiders from the scope of Section 16(b). *E.g.*, *Roth ex rel. Beacon Power Corp. v. Perseus LLC*, 522 F.3d 242, 247-48 (2d Cir. 2008); *Dreiling v. American Express Co.*, 458 F.3d 942, 949-52 (9th Cir. 2006); *see also Levy v. Sterling Holding Co.*, 544 F.3d 493 (3d Cir. 2008) (overruling prior holding in same case, to follow the SEC's clarifying amendment to Rule 16b-3).

Section 16(b) is designed to protect the public by preventing a corporation's insiders from speculating in its stock "on the basis of information not available to others." *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 (1973) (quoting S.Rep. No. 792, 73d Cong., 2d Sess., 9 (1934)). The SEC has concluded that transactions between issuers and their insiders do not present this danger of asymmetrical information.

> [W]here the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute. Based on its experience with the Section 16 rules, the Commission is persuaded that transactions between the issuer and its officers and directors that are pursuant to plans meeting [IRC and ERISA

> standards] are not vehicles for the speculative abuse that Section 16(b) was designed to prevent.

61 Fed. Reg. 30376, 30377 (June 14, 1996); *see also Roth*, *supra*, 522 F.3d at 249.

Thus, SEC Rule 16b-3 exempts from the scope of Section 16(b) any "transaction between the issuer (including any employee benefit plan sponsored by the issuer) and an officer or director of the issuer that involves issuer equity securities" under any of several different conditions. 17 C.F.R. § 240.16b-3. Among these exemptions is Rule 16b-3(d)(1), which exempts acquisitions of shares from the issuer when the "transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors." Similarly, Rule 16b-3(e) exempts dispositions of the shares to the issuer if approved in the same manner specified in Rule 16b-3(d)(1).[6]

The Officers' acquisition and disposition of the Company's equity securities, including acquisitions or dispositions intended for compensatory purposes, are thus exempt from Section 16(b) so long as approved by the Company's board of directors or compensation committee.

### B. Rule 16b-3 Does Not Require Separate Approval of Tax Withholding.

Crucially, Plaintiff does not contend in his Complaint that DigitalGlobe failed to approve its equity compensation awards to its Officers. Rather, he alleges only that the withholding of some of the shares to cover expected tax liability was not separately and specifically approved.[7]

---

[6] Plaintiff conceptualizes the withholding transactions at issue as a sale of the withheld shares back to the Company, to which Rule 16b-3(e) would apply. See Complaint, ¶¶ 10, 12, 15 (discussing Rule 16b-3(e) exemption). One might instead consider the withholding of shares as part of the transaction by which the insider acquires the issuer's stock, in which case Rule 16b-3(d)(1) would arguably apply. The question is academic, however, since the operative provisions are the same under 16b-3(d)(1) and 16b-3(e).

[7] DigitalGlobe has provided Plaintiff in its initial Rule 26(a)(1) disclosures copies of the minutes of the compensation committee meetings (and in a single instance, a board of directors meeting) at which the equity compensation awards at issue were approved. Since Plaintiff has not alleged that the awards were

11

*See, e.g.*, Complaint, ¶ 10 ("the dispositions for tax payments were not prior approved with sufficient specificity"). But no such separate approval is required under Rule 16b-3.

While this is an issue seldom raised, the SEC itself has twice volunteered its view that, where the terms of an equity compensation award permit withholding of a portion of the shares for tax purposes, no subsequent approval of the withholding is necessary. In Note (3) to Rule 16b-3, the SEC explained the prior approval requirement of Rule 16b-3(d) and 16b-3(e), indicating that when a particular transaction is approved under terms that allow withholding, separate approval of the tax withholding when it eventually occurs is *not* required:

> The approval conditions of paragraphs (d)(1), (d)(2) and (e) of this section require the approval of each specific transaction, and are not satisfied by approval of a plan in its entirety except for the approval of a plan pursuant to which the terms and conditions of each transaction are fixed in advance, such as a formula plan, *Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval.*

17 C.F.R. § 240.16b-3 (Note 3) (emphasis added).

Similarly, in a 1997 interpretation, reissued in 2007, the SEC staff responded to a query about equity grants that automatically reload. The staff went out of its way to include in its answer that automatic tax withholding does not defeat earlier approval of the transaction:

> Approval of a grant that by its terms provides for automatic reloads would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis. *The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right.*

SEC Compliance and Disclosure Interpretations 5618722 (CCH), 2015 WL 5618722, at ¶ 9475,

---

*not* approved—his only allegation is that withholding from the awards for tax purposes was not itself adequately approved—there is no need for the Court to consider such records to dismiss the Complaint.

12

Q.123.16 (emphasis added).  In their Section 16(b) treatise, Romeo & Dye interpret this reference to "automatic" withholding to mean there is no exemption "where the withholding or delivery of shares is subject to the discretion of the issuer."  P. Romeo & A. Dye, The Section 16 Deskbook (2014), at 712 (discussing Q.123.16).

Plaintiff Olagues apparently takes the view that there is similarly no "automatic withholding" if the *Officer* has any opportunity to elect not to withhold, yet there is no authority to support this view.  Moreover, this argument loses sight of the very point of this discussion: when an issuer's conduct is sufficient to meet the requirement of prior approval *by the issuer*.  See Rule 16b-3(d)(1) (incorporated by reference into Rule 16b-3(e)).

While there is little case authority on this point, the Southern District of New York has cited the SEC's interpretation with approval.  In *Donoghue v. Casual Male Retail Group, Inc.*, 427 F. Supp. 2d 350 (S.D.N.Y. 2006), the court vacated a prior ruling in favor of a shareholder bringing a 16(b) claim, based on the exemption of Rule 16b-3.  In particular, after analyzing the various SEC interpretations on the issue, the court disavowed the view that withholding a portion of an equity award for tax purposes nullified previous approval of the equity award.  The court reasoned, "where the board of directors approved the grant of an option, including the provision of a withholding right, *the board need not approve the subsequent exercise of the option and the related withholding of the shares to exercise the option*."  Id. at 357 (emphasis added).

Plaintiff's theory, that withholding shares from an equity compensation award for tax purposes requires separate, specific approval under Rule 16b-3, is wrong as a matter of law.

### C. Approval of the Officers' Equity Compensation Awards, Subject to a Default Rule of Withholding, Falls Within Rule 16b-3.

Plaintiff's bald assertion that the Company did not approve the withholding transactions

at issue is thus untenable. It is beyond dispute (and the Complaint does not allege otherwise), that the Company's directors or compensation committee approved the specific awards of equity compensation to the Officers. Those awards were subject to the terms of the Employee Stock Option Plan implicitly referenced in the Complaint. That Plan provided for—indeed, defaulted to—withholding a portion of the shares for tax liability. No other approval was necessary.

Under the authority discussed in the preceding section, no subsequent approval of a withholding transaction is required, when the terms of the equity compensation award permitted withholding of a portion of the shares for tax purposes from the outset. Here, the terms of the awards were specified in the Employee Stock Option Plan (the "Plan"), attached hereto as Exhibit 1. By alleging that withholding for tax purposes was not approved, the Complaint implicitly calls the terms of the Plan into question, such that they may be considered on a motion to dismiss. See discussion, *supra*, at footnote 2.

The Plan at issue here created a "default rule" that, in the absence of some other arrangement, "each Participant shall be deemed to have elected to have the Company withhold" shares for tax purposes. Plan, § 9(b). Since this was part of the terms of the Plan all along, and all of the equity awards at issue were subject to this provision from the time they were initially approved, no separate approval when the withholding actually took place was necessary.

Not only did the Plan allow for withholding, it established a *default rule* that withholding should take place "[i]n the absence of any other arrangement authorized by the Committee or set forth in the Award Agreement." Plaintiff does not allege that the compensation committee authorized some "other arrangement" or stated any alternative to withholding shares with respect to any of the equity awards at issue (because it did not). Approval of the awards subject to these

terms plainly constitutes the "provision of a withholding right," *Donoghue, supra*, 427 F. Supp. 3d at 357, as contemplated by the SEC and the Southern District of New York.

Even assuming all Plaintiff's factual allegations to be true, this case falls squarely within the intended scope of Rule 16b-3.[8]  "So long as the relevant securities transaction is between an issuer and an insider, and so long as the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation." *Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145-46 (2d Cir. 2002).  The transactions at issue are exempt from Section 16(b) as a matter of law.

Respectfully submitted this 4th day of May, 2017.

*s/* Van Aaron Hughes
John V. McDermott
Van Aaron Hughes
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street
Suite 2200
Denver, CO   80202-4432
Telephone:    303-223-1100
Fax:               303-223-1111
Email:            jmcdermott@bhfs.com
                      vhughes@bhfs.com

*Attorneys for Defendants*

---

[8] Plaintiff also alleges some of the shares withheld constituted "premature payments" because the "tax liability was deferred" by operation of Internal Revenue Code § 83(c)(3).  Complaint, ¶ 10.  Section 83(c)(3) addresses the tax consequences when property (presumably securities) is not transferable because sale of the property would subject the seller to suit under Section 16(b).  To invoke that provision so as to *create* Section 16(b) liability is inherently circular.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2017, I electronically filed a copy of the foregoing **DEFENDANTS' MOTION TO DISMISS** via the CM/ECF system which will send notification of such filing to counsel of record and the foregoing was served upon the following via email and first class mail:

John A. Olagues
413 Sauve Road
River Ridge, LA 70123
Olagues@gmail.com

*s/Paulette M. Chesson*
Paulette M. Chesson, Paralegal
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
303-223-1100
*fax* 303-223-1111